IN THE DISTRICT COURT OF GUAM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL CASE NO. 22-00019 |
| | ) | |
| Plaintiff, | ) | ORDER DENYING MOTIONS TO |
| | ) | DISMISS FILED BY DEFENDANT |
| vs. | ) | RAYMOND JOHN MARTINEZ, JR., |
| | ) | AND DEFENDANT JUANITA MARIE |
| RAYMOND JOHN MARTINEZ, JR.; | ) | QUITUGUA MOSER MARTINEZ'S |
| and JUANITA MARIE QUITUGUA | ) | ACCOMPANYING JOINDERS |
| MOSER MARTINEZ, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING MOTIONS TO DISMISS FILED BY DEFENDANT RAYMOND
JOHN MARTINEZ, JR., AND DEFENDANT JUANITA MARIE QUITUGUA
MOSER MARTINEZ'S ACCOMPANYING JOINDERS**

**I.      INTRODUCTION.**

On April 29, 2024, Defendant Raymond John Martinez, Jr.
("Martinez"), filed two motions to dismiss: 1) Motion to Dismiss
Superseding Indictment: Double Jeopardy; Collateral Estoppel;
Plea Agreement Resolution; and 2) Motion to Dismiss Superseding
Indictment: Prosecutorial Vindictiveness.  *See* Doc. Nos. 102
(sealed version)/124 (redacted version), 103 (sealed version)/126
(redacted version).  Defendant Juanita Marie Quitugua Moser
Martinez ("Moser") joined those motions.  *See* Doc. No. 106.  Both
motions and both joinders are denied.

**II.     BACKGROUND.**

On June 5, 2015, a Criminal Complaint was filed in the
United States District Court for the Central District of
California alleging that Martinez had intentionally and knowingly
possessed with intent to distribute more than 500 grams of a

mixture and substance containing a detectable amount of methamphetamine.[1]  *See United States v. Martinez*, 2:15-mj-01053-DUTY-1, Criminal Complaint, Doc. No. 1.  That Criminal Complaint was dismissed on June 10, 2015.  *Id.*, Doc. No. 9.

That same day, June 10, 2015, Martinez and Moser were indicted in the United States District Court in Guam.  *See United States v. Martinez*, *et al*, Crim. No. 15-00031, Doc. No. 1. Ultimately a Second Superseding Indictment charged Martinez and Moser with having conspired to distribute methamphetamine, having possessed with intent to distribute methamphetamine hydrochloride, and having conspired to commit money laundering. The indictment included forfeiture allegations.  *See id.*, Doc. No. 223.  On June 2, 2017, the court severed the drug charges in Counts 1 and 2 from the money laundering charges in Counts 3 and 4, and ordered that Defendants be tried on the drug charges first.  *See id.*, Doc. No. 261.  A jury trial began on February 21, 2018.  *See id.*, Doc. No. 393.  On May 24, 2018, the jury indicated that it could not reach a verdict on the drug charges. Given this deadlock, the court discharged the jury and declared a mistrial.  *See id.*, Doc. No. 496.

---

[1]Pursuant to Rule 201(b)(2) and (c)(1) of the Federal Rules of Evidence, this court takes judicial notice of the dockets and documents filed in other federal cases, as those adjudicative facts "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  In this order, this court only refers to matters that are publicly available for inspection and not to any sealed document.

A second trial began on October 11, 2018. *See id.*, Doc. No. 548. On November 13, 2018, the second jury also indicated that it could not reach a verdict on the drug charges, and the Guam district court declared a second mistrial and discharged that jury. *See id.*, Doc. No. 588. Defendants Martinez and Moser (Doc. No. 594) and the Government (Doc. No. 606) moved to dismiss the Second Superseding Indictment. The Government argued that Martinez/Moser had purchased more than 8 pounds of methamphetamine in California that they intended to bring to Guam, explaining that that was why the drug case had been prosecuted in Guam. *Id.*, Doc. 606, Page 1 of 2.

On December 21, 2018, Martinez and Moser were indicted in the United States District Court for the Central District of California and charged with having possessed with intent to distribute at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine. *See United States v. Martinez, et al.*, Crim. No. 2:18-cr-00903-FMO (C.D. Cal.), Doc. No. 10.

Martinez and Moser lived on Guam, so, in Magistrate Case No. 19-00003, the Government filed petitions in the United States District Court on Guam for their removal to California. In connection with "detention issues," the Government filed exhibits, including a transcript of a purported conversation on November 1, 2018, between John T. Mantanona a/k/a "Boom" and

3

Moser.  J. Mantanona reportedly told Moser that people were coming to court to see the jury and that his uncle was on the jury.  J. Mantanona also reportedly told Moser that his uncle had told Mantanona's brother at a funeral that the uncle was going to help Moser, so not to worry.  It appears that J. Mantanona's brother told his uncle to become the jury foreperson and to vote "N.G."  The uncle then reportedly told J. Mantanona's brother that Defendants could get a mistrial.  *See United States v. Martinez, et al.*, Mag. Case No. 19-0003, Doc. No. 16, pages 3-4.

In a purported call on November 12, 2018, J. Mantanona told Martinez that "Greg" had called Mantanona.  Martinez replied that they should not talk about the matter on the phone.  *Id.*, Doc. No. 16, page 6.  Agents interviewed Greg Tyquiengco on December 9, 2018.  In an FBI "302" for that interview, an agent indicated that Tyquiengco initially denied having interacted with J. Mantanona with respect to the second drug trial of Martinez and Moser.  Eventually, Tyquiengco admitted that he knew J. Mantanona worked for the defense and that Tyquiengco had told Mantanona not to worry because Tyquiengco was going to vote not guilty.  Tyquiengco said he did this because of his long-time family relationship with J. Mantanona.  *Id.*, pages 9-11.

On January 30, 2019, after a two-day hearing, the Guam district judge detained Martinez and Moser and ordered that they

4

be removed to the Central District of California.  *See id.*, Doc. No. 23.

On February 25, 2019, the Guam district court granted the Government's motion to dismiss without prejudice the drug proceedings against Matinez/Moser and denied Defendants' motion to dismiss with prejudice.  *See* Crim. No. 15-00031, Doc. No. 621. In deciding to dismiss the charges without prejudice, the judge determined that the Government had been proceeding in good faith. In particular, the court noted the Government's belief that it was more likely to receive a fair trial in California given the jury tampering evidence.  *Id.*, Pages 8-9 of 9.

After Defendants were transferred to California to stand trial on the methamphetamine-related charges, their detention pending trial was again examined.  In an appeal of a detention order in the California case, Moser indicated that she was married to Martinez.  *See* 2:18-cr-00903-FMO (C.D. Cal.), Doc. No. 42, PageID # 145.  In examining that appeal, the district judge noted that, after the second mistrial in Guam, "the government obtained evidence indicative of jury tampering by defendants."  *Id.*, Doc. No. 61, PageID # 467.  The judge stated:

> The government produced evidence that defendants were aware of and/or participated in an attempt to obstruct justice during their second jury trial through efforts to improperly contact and influence a juror. (*See, e.g.*, Dkt. 35-2, United States' Exhibits Re: Discovery and Detention Issues ("Govt. Evid."), Exh. B at 5) (phone call

5

between Juanita and defense investigator John
Mantanona ("Mantanona") in which Mantanona
explains to defendant that his brother
instructed a juror "to be the foreman" and
"if they don't agree, at least . . . you know
. . . vote 'N' 'G' okay?"); *id.* at 7 (Raymond
admonishing Mantanona for mentioning on the
phone that he spoke to "Greg" and seemingly
directing Mantanona to find out how each
juror voted); *id.* at 9-14 (transcripts of FBI
interviews with Gregorio Tyquiengco
("Tyquiengco"), a juror from second trial in
the District of Guam, corroborating evidence
that Tyquiengco spoke with Mantanona during
trial and that Tyquiengco told Mantanona that
he would vote not guilty)).

*Id.*, PageID # 469. Given this evidence, the judge concluded that
Defendants posed a serious risk of obstructing justice in the
California case. *Id.* The judge therefore detained Martinez and
Moser. *Id.*, PageID # 470.

In plea agreements filed in the California drug case on
April 11, 2019, Martinez and Moser agreed to plead guilty to
Illegal Use of a Communication Facility in return for dismissal
of the methamphetamine charge. *See* 2:18-cr-00903-FMO, Doc. Nos.
62, 63. The plea agreements began by stating that they were
between the Defendants and the United States Attorney's Office
for the Central District of California and that the agreements
did not "bind any other federal, state, local, or foreign
prosecuting, enforcement, administrative, or regulatory
authorities." ECF No. 62, PageID # 471; ECF No. 63, PageID
# 489. The agreements explained that, to be guilty of Illegal
Use of a Communication Facility in violation of 21 U.S.C.

6

§ 843(b), Defendants must have knowingly or intentionally used a telephone to help to possess with intent to distribute methamphetamine. *See* ECF No. 62, PageID # 475; ECF No. 63, PageID # 493.

Paragraph 11 of each Defendant's plea agreement said that they

> agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 13 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

> Beginning on a date unknown, and continuing until on or about June 4, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendant knowingly and intentionally used a telephone to cause and facilitate the possession with intent to distribute methamphetamine charged in the single-count indictment in the above-captioned case. Defendant's actions facilitated the possession with intent to distribute of at least 50 grams of methamphetamine.

> Specifically, on or about June 4, 2015, defendant knowingly and intentionally used a telephone to cause and facilitate the possession with intent to distribute of 3,608 grams of actual methamphetamine, as described in the single-count indictment in the above-captioned matter.

*See* ECF No. 62, PageID #s 477-78; ECF No. 63, PageID #s 495-96.

The plea agreements contained a venue provision in Paragraph 18. In that paragraph, Defendants waived the right to be prosecuted in another district, including crimes that were committed, begun, or completed in the other district. Defendants also waived any defense, claim, or argument "based on a lack of venue with respect to the offense to which defendant is pleading guilty." *See* ECF No. 62, PageID # 480; ECF No. 63, PageID # 498.

Both Defendants understood that the statutory maximum sentence for their violation was 48 months of imprisonment, 1 year of supervised release, a $250,000 fine, and a $100 special assessment. *See* ECF No. 62, PageID # 475; ECF No. 63, PageID # 493. Both also agreed not to seek or argue in any way for a sentence below 48 months of imprisonment. *See* ECF No. 62, PageID # 472; ECF No. 63, PageID # 489.

On May 1, 2019, Martinez and Moser changed their earlier not guilty pleas to guilty with respect to Count One of the First Superseding Information, which charged them with Illegal Use of a Communication Facility (Doc. No. 65). At the change of plea hearing, the Government read an email from the U.S. Attorney in Guam, stating: "This confirms that the fully executed plea agreements in the Los Angeles action CR 18-903-FMO, in acceptance of guilty pleas by the district court, pursuant thereto, shall constitute a full resolution of the charges in the prior Guam indictments, CR 15-31, signed by Frederick Black."

8

*See* Crim. No. 2:18-cr-00903-FMO, Doc. No. 104, PageID # 739. Martinez and Moser were each sentenced to 48 months of imprisonment, 1 year of supervised release, and a $100 special assessment. *See id*, Doc Nos. 90-94.

On June 19, 2019, Gregory Concepcion Tyquiengco was indicted in the United States District Court on Guam for contempt of court. *See United States v. Tyquiengco*, Crim. No. 19-00029, Doc. 1. The indictment alleged that Tyquiengco was a juror in the second Martinez/Moser trial on Guam, Crim. No. 15-00031, and that, notwithstanding having been ordered not to talk to anyone about the criminal case outside of the jury deliberation process, Tyquiengco discussed the case with "W.M.," agreeing to vote "not guilty" at the end of the trial. *Id.* On August 8, 2019, Tyquiengco pled guilty to that charge pursuant to an amended plea agreement. *See id.*, Doc. Nos. 12, 14. That amended plea agreement stated that during the second drug trial and before jury deliberation, Tyquiengco spoke with William Topasna Mantanona and John T. Mantanona a/k/a "Boom" who asked him to be an informer or foreman and furher stated that Tyquiengco "volunteered to vote 'NG.'" The docket indicates that Tyquiengco has not yet been sentenced.

Also on June 19, 2019, William Topasna Mantanona was indicted in the United States District Court on Guam for having obstructed justice and having made a false statement. *See United*

9

*States v. Mantanona*, Crim. No. 19-00028, Doc. 1. Count 1 of the indictment charged W. Mantanona with having knowingly and corruptly endeavored to influence, intimidate, and impede "G.T." to vote not guilty in the second drug trial of Martinez and Moser and to persuade other jurors to do the same. Count 2 of the indictment charged W. Mantanona with having willfully and knowingly made a false statement in an investigation by the Department of Homeland Security into juror interference in the second drug trial of Martinez and Moser. Specifically, the indictment alleged that W. Mantanona told the Government that he had never discussed the "not guilty" vote with "G.T." *Id.*

On January 15, 2020, W. Mantanona entered into a plea agreement in which he agreed to plead guilty to Count 2 in return for the Government's dismissal of Count 1. *See id.*, ECF No. 55. Page 4 of that plea agreement indicated that W. Mantanona was the brother of John T. Mantanona a/k/a "Boom," who was an investigator for Martinez and Moser with respect to the drug charges brought against them. W. Mantanona further agreed that between October 11, 2018, and November 2, 2018, he met with "G.T," who was an empaneled juror in the second drug trial of Martinez and Moser, and discussed G.T.'s "not guilty" vote.

W. Mantanona's plea agreement further described various recorded calls. On November 2, 2018, J. Mantanona told Moser that W. Mantanona had met G.T. and was told by G.T. that he would

support John 100 percent; J. Manatanona asked W. Mantanona to call G.T. and also asked W. Mantanona to be at the trial to surprise G.T. On November 6, 2018, W. Mantanona told J. Mantanona that he had spoken with G.T. and that G.T. would support J. Mantanona, telling him, "Don't worry because he knows what to do" and that G.T. "is a person who commits to what he says." On November 12, 2018, after the mistrial in the second drug trial was declared, J. Mantanona contacted W. Mantanona, telling him that they had "won" the case. W. Mantanona then gave G.T.'s cellular phone number to J. Mantanona. *See* ECF No. 55, Pages 4 and 5. In August 2021, W. Mantanona was sentenced to 6 months of imprisonment, 2 years of supervised relese, a $5,000 fine, and a $100 special assessment. *See* Judgment, Doc. No. 100.

Also on June 19, 2019, John T. Mantanona, was charged in a sealed Indictment in the Guam federal district court. *See United States v. John T. Mantanona*, *a/k/a "Boom,"* Crim. No. 1:19-cr-0027. According to the publicly viewable docket for the case, he was charged with having obstructed justice by endeavoring to influence a juror and with having conspired to distribute methamphetamine hydrochloride. The public docket does not disclose the outcome of the case. The case is clearly still pending.

11

**III.     THIS COURT DENIES THE MOTION TO DISMISS BROUGHT ON
DOUBLE JEOPARDY, COLLATERAL ESTOPPEL, AND PLEA
AGREEMENT RESOLUTION GROUNDS AND DENIES THE
ACCOMPANYING JOINDER.**

On April 29, 2024, Martinez moved to dismiss the
Superseding Indictment on double jeopardy, collateral estoppel,
and plea agreement resolution grounds.  That motion, along with
the accompanying joinder, is denied.

**A.     Double Jeopardy.**

The Double Jeopardy Clause of the Fifth Amendment
provides that "[n]o person shall . . . be subject for the same
offence to be twice put in jeopardy of life or limb."  U.S.
Const. amend. V.  The Double Jeopardy Clause provides three
related protections: (1) it prohibits a second prosecution for
the same offense after acquittal; (2) it prohibits a second
prosecution for the same offense after conviction; and (3) it
prohibits multiple punishments for the same offense.  *See United
States v. Wilson*, 420 U.S. 332, 343 (1975); *United States v.
Camacho*, 413 F.3d 985, 988 (9th Cir. 2005).  That is, the
imposition of multiple trials, multiple convictions, and multiple
punishments for the same offense is prohibited by the Double
Jeopardy Clause.  *See United States v. Arlt*, 252 F.3d 1032, 1035
(9th Cir. 2001) (en banc).

Defendants first argue that, in considering the motions
to dismiss with and without prejudice after the mistrial in the

second drug trial, the Guam district court "judicially determined jury tampering issues" such that the Double Jeopardy Clause prohibits the jury tampering charges now before the court. In other words, as argued by Martinez at the hearing, Defendants have supposedly been subjected to repeated and duplicative charges. This court is unpersuaded. While the Double Jeopardy Clause prohibits multiple prosecutions for the same offense and multiple criminal punishments for the same offense, it does not prohibit multiple references to conduct in the context of different offenses. *See Camacho*, 413 F.3d at 988 (employment discipline for theft by the Air Force is not a criminal sanction for purposes of the Double Jeopardy Clause). The Guam district court's consideration of jury tampering in deciding whether to dismiss the case with or without prejudice does not establish that Defendants are facing multiple charges for the same offense or multiple criminal punishments for the same offense. The earlier Guam case involved drug charges. Jury tampering was only considered after the second mistrial because a juror in that trial was allegedly tampered with. That juror has pled guilty with respect to that conduct.

Similarly, the California court's examination of jury tampering with respect to its pretrial detention decision does not expose Defendants to the potential of multiple punishments for the same offense. In *Breed v. Jones*, 421 U.S. 519, 527

13

(1975), the Supreme Court noted that, for purposes of the Double Jeopardy Clause, jeopardy "denotes risk" and "describes the risk that is traditionally associated with criminal prosecution." That risk is not present in proceedings that are not "essentially criminal." *Id.*

Courts have held that pretrial bail revocation hearings are not "essentially criminal," reasoning that pretrial detention is not a punishment in the usual sense, but instead serves a regulatory function. *See United States v. Grisanti*, 4 F.3d 173, 175 (2d Cir. 1993). Nor are appellate bond revocation proceedings "essentially criminal." *See Showery v. Samaniego*, 814 F.2d 200, 202-03 (5th Cir. 1987) ("Parole and revocation proceedings are not designed to punish for the violations of criminal laws, but to determine whether the conditions of parole or probation have been violated, and thus ultimately to determine whether the parolee or probationer is a good risk"); *see also United States v. Hunter*, 2016 WL 6915506, at *4 (D. Minn. Nov. 22, 2016) (stating that pretrial detention does not trigger jeopardy for purposes of the Double Jeopardy Clause).

Detention proceedings were not designed to convict Defendants of jury tampering. Instead, the detention proceedings were designed to determine whether Martinez and Moser were flight risks and whether there were conditions that could be imposed

14

such that they would not be dangers to the community. *See* 18 U.S.C. § 312(e).

Nor did the California district court's consideration of jury tampering when determining the appropriate sentences trigger any violation of the Double Jeopardy Clause. In *Witte v. United States*, 515 U.S. 389, 391 (1995), the Supreme Court considered "whether a court violates [the Double Jeopardy Clause of the Fifth Amendment] by convicting and sentencing a defendant for a crime when the conduct underlying that offense has been considered in determining the defendant's sentence for a previous conviction." The Court held that it did not raise any such issue. *Id.* at 406.

In *Witte*, the defendant had pled guilty to having conspired to possess and having attempted to possess marijuana with intent to distribute it. In determining his sentence, the court held him responsible for not only marijuana, but also over 1000 kilograms of cocaine that the court determined was "relevant conduct." This placed Witte in a base level offense of 40, with a guideline range of 292 to 365 months of imprisonment. *Id.* at 393. After granting the Government's motion for downward departure based on substantial assistance, the court sentenced Witte to a below-guideline sentence of 144 months of imprisonment. When Witte was subsequently charged with

substantive drug charges based on the same cocaine, he raised a challenge under the Double Jeopardy Clause. *Id.* at 394-95.

Even though the uncharged conduct with respect to cocaine in the first trial was used to enhance Witte's guideline range, the Supreme Court determined that that consideration did not bar the later charge. Witte's sentence in the earlier case was within the legislatively authorized punishment. The Supreme Court concluded that there was no violation of the Double Jeopardy Clause. *Id.* at 406. *Witte* is instructive here.

The alleged jury tampering by Martinez and Moser was considered when the sentencing judge imposed on Martinez and Moser the statutory maximum sentence of 48 months. The California district court's consideration of the jury tampering allegations did not amount to punishment that now triggers double jeopardy protection.

Defendants have not been subjected to repeated prosecutions for the same charges. The prior cases charged methamphetamine violations. While jury tampering was considered with respect to Defendants' detention and sentencing, jury tampering was not charged in those methamphetamine-related cases. When Defendants pled guilty to the telephone count, jeopardy attached with respect to only the conduct encompassed by that count, not with respect to all other criminal conduct. *See United States v. Patterson*, 381 F.3d 859, 864 (9th Cir. 2004)

16

("Jeopardy ordinarily attaches when the court accepts a plea of guilty."); *United States v. Brooklier*, 685 F.2d 1208, 1214-15 (9th Cir. 1982) (rejecting double jeopardy challenge when a subsequent indictment charged a different crime based on same conduct).

## B. Collateral Estoppel.

Defendants' reliance on collateral estoppel is also misplaced. In *Ashe v. Swenson*, 397 U.S. 436, 443 (1970), the Supreme Court stated that collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." The court noted that collateral estoppel applies in both civil and criminal cases. It held that collateral estoppel was embodied in the Double Jeopardy Clause. *Id.*

In *Ashe*, several defendants were accused of having robbed six men at a poker game. The robbers fled in a car stolen from one of the victims. That car was later found in a field, and three men were arrested not far from there. Ashe was arrested some distance away from there. At Ashe's trial for robbery of one of the victims, Ashe did not dispute that robbers had stolen that victim's property. What Ashe did dispute was that he was one of the robbers. The jury was instructed that, if the jury found that Ashe was one of the robbers, the theft of any

17

money from that victim would support a conviction. *Id.* at 438-39.

The jury decided that the evidence was insufficient to find Ashe guilty. *Id.*

Six weeks later, Ashe was tried for having allegedly robbed a different person at the same poker game. This time, Ashe was found guilty. The Supreme Court ruled that this conviction violated the Double Jeopardy Clause. Having been acquitted in the earlier trial, Ashe was protected from "having to 'run the gauntlet' a second time." *Id.* at 446.

The Supreme Court ruled that, once a jury had determined that there was reasonable doubt that Ashe was one of the poker game robbers, the prosecution could not present the same or different evidence in a second prosecution in the hope that a different jury might reach a different result. *Id.* That is, the prosecution was collaterally estopped from litigating that issue again.

Here, by contrast, there was no final determination of an issue that would cause Martinez and/or Moser to have to run the gauntlet a second time. Unlike in *Ashe*, this case raises no issue already determined in their favor. Instead, with respect to detention proceedings and sentencing, which used different standards of proof than the beyond a reasonable doubt standard applicable to the criminal charges in this case, the courts

18

considered the jury tampering allegations without actually rendering Martinez or Moser guilty of jury tampering. *See* Mag. No. 19-00003 (D. Guam), Doc. 28, Page 3 of 257 (Martinez's attorney arguing that danger to the community is a clear and convincing standard but that flight risk is a preponderance of the evidence standard); *see also United States v. Lucas*, 101 F.4th 1158, 1163 (9th Cir. 2024) ("We join our sister circuits in holding that clear and convincing evidence is not required for factual findings under the Guidelines, even when potentially large enhancements are at stake; fact-finding by a preponderance of the evidence is sufficient to satisfy due process at sentencing."). Collateral estoppel is inapplicable.

### C.   **Plea Agreement Resolution.**

Martinez and Moser argue that their plea agreement process resolved the jury tampering charges. They misapprehend what happened in that process.

On June 10, 2015, Martinez and Moser were indicted in the Guam district court. *See United States v. Martinez*, *et al*, Crim. No. 15-00031, Doc. No. 1. A Second Superseding Indictment charged Martinez and Moser with having conspired to distribute methamphetamine, having possessed with intent to distribute methamphetamine hydrochloride, and having conspired to commit money laundering, as well as with being subject to forfeitures. *See id.*, Doc. No. 223. After the case was bifurcated, Martinez

and Moser went to trial on the drug charges. As noted earlier in this order, a mistrial was declared when the jury could not reach a unanimous verdict.

Given the cloud of jury tampering in the Guam case, which involved methamphetamine obtained in California that was intended to go to Guam, on December 21, 2018, Martinez and Moser were indicted in the United States District Court for the Central District of California for the same methamphetamine conduct. They were charged with having possessed with intent to distribute at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine. *See United States v. Martinez, et al.*, Crim. No. 2:18-cr-00903-FMO, Doc. No. 10.

In their plea agreements, Martinez and Moser agreed to plead guilty to Illegal Use of a Communication Facility in return for the dismissal of the methamphetamine charge. *See id.*, Doc. Nos. 62, 63. At the change of plea hearing, the Government read an email from the Guam U.S. Attorney, stating: "This confirms that the fully executed plea agreements in the Los Angeles action CR 18-903-FMO, in acceptance of guilty pleas by the district court, pursuant thereto, shall constitute a full resolution of the charges in the prior Guam indictments, CR 15-31, signed by Frederick Black." *See United States v. Martinez, et al.*, Crim. No. 2:18-cr-00903-FMO, Doc. No. 104, PageID # 739.

20

Martinez and Moser claim that their plea agreements resolved the jury tampering charges. Nothing in the record supports that assertion. The email read at the change of plea hearing refers to a complete resolution of the charges in the prior Guam case. Those charges concerned conspiracy to distribute methamphetamine, possession with intent to distribute methamphetamine hydrochloride, conspiracy to commit money laundering, and forfeitures. No jury tampering claim was asserted in the prior Guam indictment. *See id.*, Doc. No. 223. The plea agreements do not support Defendants' asserted belief that their plea agreement encompassed resolution of any jury tampering allegations.

At the hearing on their motion to dismiss, Defendants argued that Paragraph 11 of their agreements indicated that the agreements were not a full recitation of all facts known to either party relating to the underlying criminal conduct. That statement does not create any ambiguity. The underlying criminal conduct with respect to the plea agreements pertained to the use of a telephone to facilitate a methamphetamine crime. That criminal conduct did not involve jury tampering. In fact, the plea agreements failed to even mention jury tampering. Similarly, the venue provision in Paragraph 18 of the agreements only discussed where venue was proper with respect to the offense to which Defendants were pleading guilty. Even the Guam U.S.

21

Attorney's email that was read at the change of plea hearing said the guilty pleas constituted "a full resolution of the charges in the *prior* Guam indictments." Crim No. 2:18-cr-00903 FMO, Doc. No. 104, PageID # 739 (emphasis added). The plea agreements cannot be reasonably read as encompassing jury tampering charges that had not been filed at the time.

Defendants are unpersuasive in arguing that they reasonably believed that the agreements encompassed jury tampering and any asserted detrimental reliance on such a proposition has no basis in the record. To the contrary, the plea agreements specifically state that,

> except as set forth herein, there are no promises, understandings, or agreements between the USAO and the defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in writing signed by all the parties or on the record in court.

Crim. Case. No. 2:18-cr-00903-FMO, Doc. Nos. 62 and 63, PageID #s 486 and 504. If Defendants wanted their plea agreements to encompass the jury tampering charges, they were free to negotiate such an agreement. Of course, because the alleged jury tampering occurred in Guam, California may not have been the proper venue to resolve the Guam jury tampering charges.

22

**IV.** **THIS COURT DENIES THE MOTION TO DISMISS ON PROSECUTORIAL MISCONDUCT GROUNDS AND THE ACCOMPANYING JOINDER.**

Martinez has filed a separate motion to dismiss that asserts prosecutorial misconduct. Moser joins in that motion. The power of a court to dismiss an indictment based on prosecutorial misconduct "is frequently discussed but rarely invoked." *United States v. De Rosa*, 783 F.2d 1401, 1403 (9th Cir. 1986) (quoting *United States v. Samango*, 607 F.2d 877, 881 (9th Cir. 1979)). It is a "drastic step," and therefore a "disfavored remedy." *United States v. Rogers*, 751 F.2d 1074, 1076 (9th Cir. 1985); *see also United States v. Struckman*, 611 F.3d 560, 577 (9th Cir. 2010). When an indictment is dismissed, it may be to protect a defendant's constitutional due process rights or pursuant to the court's inherent supervisory powers. *De Rosa*, 783 F.2d at 1404.

Dismissals based on prosecutorial misconduct are reserved for "flagrant cases." *United States v. Sears, Roebuck and Co.*, 719 F.2d 1386, 1391 (9th Cir. 1984). Short of dismissing an indictment, a court may impose less onerous penalties for violations of a defendant's constitutional rights. In addition to ordering a trial free from any constitutional violation, the court may remove and quarantine a prosecutor, suppress tainted evidence, order the offending prosecutor to pay

23

a fine or attend ethics classes, or issue a public reprimand. *See United States v. Horn*, 29 F.3d 754, 766-67 (1st Cir. 1994).

When examining whether an indictment should be dismissed based on constitutional error, a court focuses on "protecting the integrity of the judicial process and preserving fairness for the individual defendant." *United States v. Larrazolo*, 869 F.2d 1354, 1357 (9th Cir. 1989). Thus, a court may dismiss an indictment when a vindictive prosecution violates due process. *See Blackledge v. Perry*, 417 U.S. 21, 28 (1974).

The Ninth Circuit has identified two ways a defendant may establish vindictive prosecution:

> A prosecutor violates due process when he seeks additional charges solely to punish a defendant for exercising a constitutional or statutory right. A defendant may establish vindictive prosecution (1) by producing direct evidence of the prosecutor's punitive motivation, or (2) by showing that the circumstances establish a reasonable likelihood of vindictiveness, thus giving rise to a presumption that the Government must in turn rebut.

*United States v. Kent*, 649 F.3d 906, 912–13 (9th Cir. 2011) (quotation marks, alterations, and citations omitted). Defendants establish neither.

Martinez argues vindictiveness based on what he says was the Guam prosecutor's statement in open court that he would prosecute Defendants 30 or 100 times until he got a conviction. *See* ECF Nos. 103 (sealed) and 126 (redacted), Page 7 of 21.

24

Martinez does not provide a specific record citation for such a statement. What Martinez relies on is his attorney's assertion that the prosecutor said he would prosecute 30 times if he had to. *See* Crim. Case. No. 1:15-cr-00031, Doc. 645, page 28 of 257 (counsel for Martinez stating, "You know the government has indicated on the record and before Your Honor that they'll try this case 30 times"). The district judge did not remember any such statement and asked whether the prosecutor had actually said that. Martinez's counsel responded "yes," *id.*, Pages 28-29 of 257, but in connection with the pending motion to dismiss has provided no transcript showing the Government's attorney making that alleged statement. This court has no duty to scour the record looking for such a statement.

At best, counsel for codefendant Moser said that he remembered that the reference to trying the matter 30 times occurred. *See id.*, Pages 61-62 of 257. Moser's counsel repeated that reference a little while later. *See id.*, Page 67 of 257.

After the second mistrial, Defendants sought dismissal with prejudice given the two mistrials. The Government's attorney, apparently believing there had been jury tampering, displayed frustration, causing the Guam district judge to tell that attorney not to get all "huffy puffy." Crim. No. 15-00031, Doc. No. 645, Page 91 of 257.

Case 1:22-cr-00019    Document 142    Filed 06/11/24    Page 25 of 29

Even if the Government's counsel in the Guam criminal trial did say he would try the criminal charges 30 or 100 times if necessary and displayed frustration, and even if that attorney made disparaging remarks about Defendants, that would not give rise to any reasonable inference of vindictiveness here. The motion recognizes that the prosecutor in the two Guam criminal trials has retired. *See* Doc. 126, Page 4 of 20. That prosecutor, Frederick Black, is not listed on the indictment or on the docket for this jury tampering case. Nothing in the record establishes why any alleged vindictiveness by the former prosecutor should be imputed to the present one. The attorney prosecuting the jury tampering case does not appear to have entered an appearance in the Guam drug cases until long after mistrials had been declared. Even if the retiring prosecutor convinced the California prosecutor to charge the drug crimes in California or took some other action disfavoring Defendants, any presumption of vindictiveness is rebutted by the guilty pleas by other individuals with respect to jury tampering in the second Martinez/Moser drug trial, as well as by purported evidence of Defendants' supposed knowledge of such jury tampering.

There is no need to delay this matter for discovery, as Martinez requests, and the request for further discovery with respect to vindictiveness is denied.[2]

This court is not, of course, saying that Martinez and Moser are guilty of the charges, only that the indictment suggests a good faith basis for the charges brought in the new prosecution.

Defendants highlighted at the hearing on their vindictiveness motion what they called the "piecemeal" nature of

_____

[2] Defendants asked the court to delay the hearing on the vindictive prosecution motion until the conclusion of their attempt to obtain grand jury materials from their earlier California criminal case. *See* Crim. No. 18-00903-FMO, Doc. No. 106 (May 18, 2014). Speculating that the grand jury transcripts would include references to their alleged jury tampering, Defendants asserted that such references would be evidence of vindictiveness. This court declined to delay proceedings in this case.

Grand jury transcripts are not usually disclosed based on pure speculation. If they were, they would never be secret. Moreover, Defendants do not even contend that the Assistant United States Attorney(s) who appeared before the grand jury in the Central District of California had anything to do with the decision to seek the Guam jury tampering indictment.

Even if this court ignores the untimeliness of Defendants' request for the California grand jury transcripts, which was not made until 5 days after the Reply in support of the motion to dismiss on prosecutorial misconduct grounds was filed on May 13, 2024, this court is unpersuaded that the transcripts would affect this court's analysis of the vindictive prosecution motion or this court's ruling. References to the alleged jury tampering, even assuming they were to be revealed in the transcripts, would not establish a vindictive motive for the charges Defendants now face. Such hypothetical references might instead have been presented as evidence of Defendants' alleged consciousness of guilt on drug-related matters.

the criminal actions against them, suggesting that the jury tampering charge should have been brought in the same case as the telephone charge that was prosecuted in California. That telephone count involved conduct that spanned both California and Guam, so presumably could have been brought in either Guam or California. The charge was pursued in California precisely because drug trials had twice ended in mistrials in the Guam district court. By contrast, the jury tampering occurred entirely on Guam, so could not have been properly charged in California. Under these circumstances, it is difficult for this court to view as vindictive the bringing of a separate case in Guam to address alleged jury tampering. Notably, the telephone charge in California carried no mandatory minimum sentence and a lower statutory maximum sentence than the Guam drug charges, so the California case is equally difficult to view as having been vindictive.

The court declines to dismiss the Superseding Indictment based on prosecutorial misconduct. The motion to dismiss and the accompanying joinder are denied.

V.       **CONCLUSION.**

This court denies the motions to dismiss, Doc. Nos. 102 (sealed version)/124 (redacted version) and 103 (sealed version)/126 (redacted version). The court also denies the accompanying joinders in those motions. *See* Doc. No. 106.

It is so ordered.

DATED: Honolulu, Hawaii, June 11, 2024.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States of America v. Martinez, Jr., et al.,* CRIMINAL CASE NO. 22-00019; ORDER DENYING MOTIONS TO DISMISS FILED BY DEFENDANT RAYMOND JOHN MARTINEZ, JR., AND DEFENDANT JUANITA MARIE QUITUGUA MOSER MARTINEZ'S ACCOMPANYING JOINDERS

29